

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

December 23, 1953

Hon. Homer Garrison, Jr.
Director, Texas Department
   of Public Safety
Camp Mabry
Austin, Texas

Opinion No. S-117

Re: Applicability of Article
6701c-1, V.C.S., to "com-
mercial vehicles" and
"truck-tractors" operated
over the highways of Texas
by persons other than the
registered vehicle owner.

Dear Sir:

     Your request for the opinion of this office regarding the applicability of Senate Bill 122, Acts of the 53rd Legislature, to various classifications of motor vehicle operations contains the following specific questions:

    "1. Are we correct in our interpretation that Senate Bill 122 is applicable to all commercial motor vehicles and truck tractors operated over the highways of Texas, except those expressly exempt by the terms of the act, under lease by a person or persons who do not operate for hire and whose operations are neither subject to or regulated by the provisions of the Texas Motor Carrier Law or Part II of the Interstate Commerce Act?

    "2. Are we correct in our interpretation that Senate Bill 122 is applicable to all commercial motor vehicles and truck tractors operated over the highways of Texas under lease by a person or persons (lessees) who are lawfully engaged in for hire transportation pursuant to authority issued to such person or persons by either the Railroad Commission of Texas or the Interstate Commerce Commission or both?

    "3. Are we correct in our interpretation that Senate Bill 122 is applicable to all commercial motor vehicles and truck tractors operated over the highways of Texas by a person or persons in the for hire transportation of exempt commodities under Part II of the Interstate Commerce Act?"

Senate Bill 122 of the 53rd Legislature was enacted as Chapter 209, Acts of the 53rd Legislature, 1953, and is codified as Article 6701c-1, Vernon's Civil Statutes.

Article 6701c-1 applies to the operation of commercial motor vehicles and truck-tractors over the highways of Texas by any person other than the registered owner thereof, or his agent, servant or employee under his direct supervision and control, but excepts from its application the movements of specific commodities set forth in Section 2 therein, and excepts movements of such character as are defined in Section 2, Subsections (a), (b) and (c) and Section 8.

The Act further provides that if such vehicle is operated over the highways of Texas by one other than the registered owner, or someone under his direction and supervision, then there must be filed with the Department of Public Safety a copy of the lease or agreement under which such vehicle is operated (Sec. 2). Further, a copy of said lease or agreement and a copy of the letter of transmittal to the Department of Public Safety showing the date said lease was transmitted to the Department must be kept in the cab of such vehicle (Sec. 2), and there must be posted on the side of the vehicle the name and address of the person or persons operating the vehicle, or for whose account and benefit it is being operated (Sec. 6).

Section 1 defines the terms "commercial motor vehicle" and "truck-tractor" for the purposes of this Act. It is apparent that these definitions make no distinction as to the character of operations to be performed by said vehicles, and no such distinction appears within the Act. We thus conclude that Article 6701c-1 is intended to apply to operations of commercial motor vehicles and truck-tractors, except to the operations therein specifically exempted, when the operator thereof is not the registered owner of such vehicle, or his agent, servant or employee, regardless of the character of the operation as being intrastate or interstate, regulated or non-regulated, private or for hire.

It is well established that the highways of the State are public property. Stephenson v. Binford, 287 U.S. 251 (1932); New Way Lumber Co. v. Smith, 128 Tex. 173, 96 S.W. 2d 294 (1932). That the State, under its police power, may prescribe reasonable regulations for the use of its public highways in the interest of public safety and highway conservation is equally well established. Lloyd A. Fry Roofing

Co. v. Wood, 344 U.S. 157 (1952); McDonald v. Thompson, 305 U.S. 263 (1938); Sproles v. Binford, 286 U.S. 352 (1932); Morris v. Duby, 274 U.S. 143 (1927); Railroad Commission of Texas v. Querner, 150 Tex. 490, 242 S.W.2d 166 (1951); Ex Parte Truelock, 140 S.W. 2d 167 (Tex.Crim. 1940).

In Stephenson v. Binford, supra, the United States Supreme Court announced the following criterion in passing upon the validity of State legislation enacted pursuant to the State's police powers over its highways:

"The assailed provisions, in this view, are not ends in themselves, but means to the legitimate end of conserving the highways. The extent to which, as means, they conduce to that end, the degree of their efficiency, the closeness of their relation to the end sought to be attained, are matters addressed to the judgment of the legislature, and not to that of the courts. It is enough if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is an actual relation between the means and the end."

We interpret Article 6701c-1 as being designed to aid in the enforcement of existing police, welfare and safety laws applicable to the operation of commercial vehicles and truck-tractors over the highways of this State. Under this interpretation we consider this Act to be within the test announced in Stephenson v. Binford.

Returning to your three specific classifications of motor carrier operations, we consider to which operations the State's police power may validly extend.

Unquestionably the State has the power to regulate the handling of intrastate commerce over its highways. Railroad Commission of Texas v. Querner, supra; Eichholz v. Public Service Commission of Missouri, 306 U.S. 268 (1939); Continental Baking Co. v. Woodring, supra.

A state may also, under its police power, prescribe certain reasonable and appropriate regulations applicable to interstate commerce. In Morris v. Duby, supra, the Court declared:

"In the absence of national legislation especially covering the subject matter of

interstate commerce, the state may right-
fully prescribe uniform regulations adopted
to promote safety upon its highways and the
conservation of their use, applicable alike
to vehicles moving in interstate commerce and
those of its own citizens."

For decisions to the same effect, see: McDonald v.
Thompson, supra; Sproles v. Binford, supra; Railroad Com-
mission of Texas v. Querner, supra; Ex Parte Truelock, supra.

A very recent case, Lloyd A. Fry Roofing Co. v. Wood,
344 U.S. 157 (1952), further defines the scope of State au-
thority over interstate commerce and is excellently discussed
in Volume 32, page 225 of the Texas Law Review for December, 1953.
This case involved the authority of the Arkansas Public Service
Commission to require a Tennessee company, engaged exclusively
in interstate commerce (but operating without authority from the
Interstate Commerce Commission), to obtain a permit from said
Commission before operating over Arkansas highways. In the
course of its opinion the Court said:

"Here neither petitioners nor the drivers
have obtained any kind of authority from the
Interstate Commerce Commission. Indeed, peti-
tioners whole case has been built on the premise
that neither it nor its drivers must get a permit
from the state or the national regulatory agency.
In this situation our prior cases make clear that
a state can regulate so long as no undue burden
is imposed on interstate commerce, and that a mere
requirement for a permit is not such a burden. . . ."

In the above case the Court by its decision approved
the proposition urged by the Arkansas Commission, i.e., that
registration with the Arkansas Commission for identification
purposes was necessary to a proper application of the State's
valid police, welfare, and safety regulations over motor
carriers using its highways.

A review of the above authorities reflects that
the police power of Texas may constitutionally extend to
the three classifications of motor carrier operations con-
tained in your specific questions. Your questions are each
answered in the affirmative.

## SUMMARY

Article 6701c-1 V.C.S., applies to all operations of commercial motor vehicles and truck-tractors, except to the operations therein specifically exempted, when the operator thereof is not the registered owner of such vehicle, or his agent, servant or employee, regardless of the character of the operation as being private or for hire, regulated or non-regulated, intrastate or interstate, and such application is not violative of the Interstate Commerce Clause of the Constitution of the United States.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Mert Starnes*

Mert Starnes
Assistant

APPROVED:

Dean J. Capp
Oil & Gas Division

John Atchison
Reviewer

Robert S. Trotti
First Assistant

John Ben Shepperd
Attorney General

MS:bt